In my opinion, the judgment upon the report of the referee should be reversed and a new trial ordered.

LARREMORE and BEACH, JJ., concurred.

Judgment reversed and new trial ordered.

---

CARL F. W. BUSCH *et al.*, Respondents, *against* MARY BUSCH, Appellant.

(Decided June 30th, 1884.)

In an action to set aside an agreement in writing between plaintiffs and defendant, it appeared that after the death, in Germany, of defendant's husband, intestate and without children or other descendants surviving him, and leaving personal property both in Germany and in the City of New York, in which city he resided, defendant represented to plaintiffs, the father and mother of the deceased, that by the laws of New York she was entitled to his entire estate, which they, being ignorant of their rights, believed, and were thereby induced to sign the agreement in question, by which they relinquished all claims upon the property of their son, and she, in consideration thereof, agreed to donate or pay to them, out of the estate, a certain sum, and they agreed to erect a mon-

ument on his grave and pay the expenses of his illness and other disbursements. *Held*, that the agreement should be set aside as void, whether defendant did or did not know what the laws of New York were on the subject of her representations.

Plaintiffs in their complaint asked that defendant "be held to account and to pay" to the father "his distributive share of the estate." *Held*, that the accounting should be taken in this court, it having jurisdiction, instead of requiring defendant to account, as administratrix, before the Surrogate.

APPEAL from a judgment of this court entered upon the report of a referee.

The facts are stated in the opinion.

*John H. Bergen*, for appellant.

*Francis B. Chedsey*, for respondents.

CHARLES P. DALY, Chief Justice.—The finding of the referee was fully warranted by the evidence.

The defendant denies that she ever made the representation alleged, or that she knew what the laws of the state of New York were upon the subject. The referee believed the statement of the plaintiffs, and there is nothing in the case to lead us to question the correctness of his conclusion.

It may be, as the defendant testified, that she did not know what the laws of the state of New York were, but this would make no difference. We cannot assume that the representation was innocently made, after denying that she made any such representation whatever. But if we should assume that it was made under the supposition that it was true, it would be equally a reason for setting aside the contract, on the ground of a mutual mistake (*Boyd* v. *De La Montagnie*, 73 N. Y. 503.)

. The plaintiff, Carl F. W. Busch, the father of the intestate, testified that the defendant, whom they assumed to be the lawful wife of their son, told them—father and mother—before they signed the agreement, that according to the laws of the state of New York, the widow was the sole heir,

and inherited all the estate of the husband ; that the German law had nothing to do with the settlement of the estate, but all would be done in accordance with the laws of New York; that he wanted her .to wait a year before they made the settlement, but she would not consent, claiming that he had nothing to say regarding the estate ; that he signed the contract which, after these representations, was prepared at the request of himself, his wife, and the defendant, because he supposed the representations made by her as to what were her rights were true ; and because he did not want to have any trouble, but desired to settle all in a friendly manner. And Rebecca Busch, the mother, testified that the defendant told her that, according to the laws of the state of New York, the widow inherited the entire estate left by the husband, and that in this case she was the only heir of the deceased, and that it was owing to what the defendant told her respecting the defendant's rights that she signed the agreement with her husband.

The agreement, which was drawn by a 'mandator' (a kind of attorney or authorized agent) in Bremervorde, in Hanover, Germany, where the parents-in-law reside and where the defendant then was, is in corroboration of the representation alleged to have been made by her; for it begins by declaring that according to the American law, as there was no living child the widow was the sole and undisputed heir to all the property left by her deceased husband. It then states that, in consideration of differences of opinion between the widow and the parents-in-law, the parties had agreed that the parents would relinquish, in favor of their daughter-in-law, all claims upon the property of their son ; and that she, in consideration of that relinquishment, would pay out of the inheritance of her deceased husband, to them, the sum of 3,000 marks, which as the agreement expresses, " they thankfully accept;" and they on their part obligate themselves to erect a monument over the grave of their deceased son, at their own proper cost and expense, and to pay all costs and expenses incurred during his sickness, for doctors and medicines and all other

disbursements, out of their own means, without demanding any restitution therefor; and, furthermore, to make no claim for payments on behalf of their deceased son.

The refusal to wait a year, upon the ground that the plaintiffs had nothing to say, as everything belonged to her, and her apparent liberality in allowing them 3,000 marks out of moneys which the deceased had placed in the savings bank in Bremervorde, the receipt for which he had deposited with his mother, out of which 3,000 marks, the parents could pay all the expenses incurred during his illness at Bremervorde, and erect a tombstone over his grave, was well calculated to mislead people living in a small town in Germany, who were, as they testify, wholly unacquainted with the laws of the State of New York, where their son had resided before he returned to Bremervorde, with the defendant as his wife, and where he died twenty-three days before this agreement was entered into. The impression left upon my mind by the whole evidence, is that the arrangement which was carried out so soon after the death of the deceased, and embodied in the agreement, was contrived by the defendant to get all the property of the deceased into her possession, except what was necessary to pay the debts in Bremervorde, for which his estate would be liable, and the cost of a tombstone.

The report of the referee, so far as it finds that the agreement should be rescinded and adjudged null and void, should be affirmed; but I question the correctness of the finding that the defendant, as administratrix, account before the Surrogate of this county.

An accounting before the Surrogate is a summary proceeding created and regulated by statute, which is to be exercised in the cases and in the manner prescribed by the statute (*Seaman* v. *Duryea,* 11 N. Y. 328). I doubt, therefore, our power to order that officer to direct an accounting. It may be, as administrators are entitled after a certain time to submit their accounts to the Surrogate for settlement, that we might order the defendant to do this; when the Surrogate could direct that the defendant pay to the plaintiff Carl F. W. Busch his share of the estate.

But the plaintiffs have not asked for an accounting before the Surrogate.    What they have asked in their complaint, is that the defendant " be held to account and to pay to the plaintiff Carl F. W. Busch his distributive share of the estate."    This court has jurisdiction to order an accounting in the case of executors, administrators, guardians, trustees, &c. ( *Christy* v. *Libby,* 2 Daly 418 ; *Bowen* v. *Irish Presbyterian Church,* 6 Bosw. 246 ; *Rogers* v. *King,* 8 Paige 210 ; Redfield's Practice of Surrogate's Courts 355, 357 ; Willard's Equity Jurisprudence 560) ;    and the plaintiff having come to be relieved from the agreement shutting the father off from all claim to the personal estate of his deceased son, and having obtained it, the accounting should be ordered here.    This portion of the report, therefore, should be reversed, the residue affirmed and the usual order entered for an accounting.

LARREMORE and BEACH, JJ., concurred.

Judgment accordingly.