HERMAN BERRY, Respondent, *v.* AMERICAN CENTRAL INSUR-
ANCE COMPANY of St. Louis, Appellant.

| | |
|---|---|
| 132 | 49 |
| 132 | 137 |
| 132 | 49 |
| 142 | 387 |
| 132 | 49 |
| 149 | 484 |

A tenant who has agreed verbally with his landlord to keep the demised
premises insured has an insurable interest in the property, and may
insure in his own name to the extent of the amount agreed to be insured,
and when no amount is named, his interest is the full value.

Defendant issued to plaintiff a policy of insurance upon a building; the
legal title thereto was in plaintiff's son. Plaintiff was in possession
under a verbal agreement, whereby he was to occupy the premises
during his life, and in consideration thereof to keep the building insured,
in repair, and to pay the taxes. *Held,* that while the agreement might
be, as between plaintiff and his son, void because not in writing, yet
plaintiff, while in the unquestioned possession of the property, could
not deny his liability, and so was bound to keep the building insured,
and, therefore, had an insurable interest.

The policy provided that it would be void if, without notice to the com-
pany and permission therefor indorsed on the policy, the interest of the
insured was other than absolute ownership. The policy also provided
that "no agent has any power to waive any condition of the policy;"
and that no notice to, or consent of, any agent of the company shall
bind the company until the notice or consent is clearly expressed and
indorsed on the policy, signed by the agent. Plaintiff informed defend-
ant's general agents, who issued the policy, that his son had bought the
property for him; that he was to have it as a home as long as he lived,
and was to insure it. *Held,* that this statement fairly gave notice that
plaintiff was not the owner, and that, as part of the consideration for its
use and possession, he had agreed to insure it; that this justified a find-
ing that the condition as to title was waived; that the agents, having
authority to make contracts without reference to the home office, their
power to waive conditions in the policy were co-existent with that of
defendant.

The amount of the insurance was $1,100. A loss having occurred, plain-
tiff, upon the representations of the defendant's adjuster that the policy
was void by reason of the breach of the condition as to title, agreed to
accept $400 in settlement of his claim. He received a draft for that sum
upon defendant, drawn by its general agent, payable to his order, and
executed a paper canceling the policy, which he delivered to the agent;
thereafter he offered to return the draft and demanded full payment of
the loss, which was refused. In an action to set aside the compromise
and cancellation, and to recover upon the policy, the court found that
the settlement was procured by the statement so made by the adjuster,
and that plaintiff was entitled to the relief sought. *Held,* no error;

that there was not simply a mistake, but a surrender of legal rights intentionally induced by false representation as to the law; that this constituted fraud.

Plaintiff offered in his complaint to deliver up the draft, defendant claiming that as no proper or sufficient tender of the draft had been made before suit brought, the court had no power to grant relief. *Held,* untenable; that the offer in the complaint was sufficient.

(Argued January 27, 1892; decided March 8, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made February 11, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to set aside a compromise settlement and a cancellation of a policy of insurance against fire and a release thereof, and to recover upon the policy.

The policy insured the plaintiff to the amount of $875 on buildings and $225 on personal property. Defendant was to make good all loss or damage, etc., not exceeding the above-named amounts, "nor the interest of the assured in the property," etc. The policy provided that it should be void if "without notice to this company and permission therefor in writing indorsed thereon the interest of the assured be other than the entire, unconditional and sole ownership, or if the property insured be a building standing on ground not owned by the assured in fee simple."

It further provided that "no agent has any power to waive any condition of this policy. No notice to, and no consent of, or agreement by any agent of this company shall be binding on this company until such notice, consent or agreement, as the case may be, is clearly expressed and indorsed in writing hereon and signed by such agent."

The legal title to the real property was in the plaintiff's son, and the plaintiff was in possession under a verbal agreement, whereby he was to occupy the property during his life, and in consideration thereof was to keep it insured, in repair, and pay the taxes thereon.

There was a total loss by fire of the buildings within the life-time of the policy, and a loss on personal property of $128.20.

Subsequent to the service of proofs of loss plaintiff, upon the representations of defendant's adjuster that the policy was void by reason of the breach of the conditions as to title, agreed to accept $400 in settlement of his claims, and thereupon received from such adjuster a draft signed by the general agent upon the defendant for such sum, payable to his order and attached to a blank receipt, and which provided "that it would not be paid if detached from the receipt therein referred to."

Upon receiving this draft, plaintiff executed a paper canceling said policy and delivered it to the agent.

Thereafter, being advised that his policy was not void, he offered by letter to return the draft and demanded full payment of his loss, which being refused, he brought the present action.

Further material facts appear in the opinion.

*I. N. Ames* for appellant. Plaintiff had no insurable interest in the buildings. As to the real estate, it was a wager policy. (1 May on Ins. [3d ed.] §§ 74, 75; Marshall on Ins. 104, 116; *Rohrback* v. *G. F. Ins. Co.*, 62 N. Y. 53; 4 R. S. 2586; *Ruse* v. *M. B. Ins. Co.*, 23 N. Y. 523.) Plaintiff, when he accepted the policy, became ·chargeable with knowledge of its contents, and took it subject to its terms. (*Allen* v. *G. A. Ins. Co.*, 126 N. Y. 6.) Even, if for the sake of argument, the contract between the father and son had given the plaintiff an insurable interest in the buildings, still the learned trial court erred in its measure of damages as to the said buildings. (*Read* v. *S. Ins. Co.*, 1 Metc. 16; *Turner* v. *Barnes*, 5 Wend. 541; *Murray* v. *C. Ins. Co.*, 11 Johns. 302.) The objections and exceptions of the defendant to the evidence given upon the trial to modify, contradict or change the terms of the policy under the pleadings, and all the conversations between the parties to the policy prior to the delivery

thereof, were merged in the policy. (*Walton* v. *A. Ins. Co.*, 116 N. Y. 317.) There was no proper or legal tender by the plaintiff to the defendant of the $400 draft before the action was brought. (*Graham* v. *Myer*, 99 N. Y. 611; *Gould* v. *C. C. N. Bank*, 86 id. 75; *Cobb* v. *Hatfield*, 46 id. 533; *Evans* v. *Gale*, 17 N. H. 573; *Thayer* v. *Turner*, 8 Metc. 550; *Kimball* v. *Cunningham*, 4 Mass. 502.)

*Hannibal Smith* for respondent. The conditions in the policy as to the unconditional and sole ownership in the assured were waived by the defendant; and the policy took effect as if the conditions were not in the policy. (*Van Schoick* v. *N. Ins. Co.*, 68 N. Y. 434; *Miaghan* v. *H. Ins. Co.*, 24 Hun, 58; *Whited* v. *G. Ins. Co.*, 13 id. 191; 76 N. Y. 415; *Broadhead* v. *L. Ins. Co.*, 14 Hun, 452; 23 id. 397; *Chase* v. *P. Ins. Co.*, 14 id. 456; *Bennett* v. *N. B. Ins. Co.*, 81 N. Y. 273; *Woodruff* v. *I. Ins. Co.*, 83 id. 133; *Haigh* v. *C. Ins. Co.*, 92 id. 51; *Couch* v. *R. G. Ins. Co.*, 25 Hun, 460; *Short* v. *H. Ins. Co*, 90 N. Y. 16; *Bennett* v. *A. Ins. Co.*, 106 id. 243; *Smith* v. *H. Ins. Co.*, 47 Hun, 30; *Pitney* v. *G. F. Ins. Co.*, 65 N. Y. 6; *McCabe* v. *F. B. Ins. Co.*, 14 Hun, 602; *Pelton* v. *W. Ins. Co.*, 77 N. Y. 605; *Sprague* v. *H. P. Ins. Co.*, 69 id. 128; *Ellis* v. *A. C. Ins. Co.*, 50 id. 402; *C. Ins. Co.* v. *Spranknieble*, 52 Ill. 53; *N. F. Ins. Co.* v. *Boomer*, Id. 442; *Dohn* v. *F. J. S. Ins. Co.*, 5 Lans. 275; *Viele* v. *G. Ins. Co.*, 96 Am. Dec. 83; *Kruger* v. *W. F. & M. Ins. Co.*, 1 Am. Rep. 42; *Vanderhoer* v. *A. Ins. Co.*, 46 Hun, 328; Wood on Fire Ins. § 86; *Huff* v. *C. F. Ins. Co.*, 29 Conn. 10; *I. F. Ins. Co.* v. *Dunham*, 117 Penn. St. 460; *Elliott* v. *A. M. F. Ins. Co.*, Id. 548.) The plaintiff being in possession of the property under a verbal agreement that he should have the use of it during his natural life on paying taxes upon the same and making improvements thereon, had an interest and title in the property, good as against the world, except the true owner; and in equity his interests would be protected, notwithstanding it was not in writing. (Wood on Ins. §§ 257, 266; *Mayor* v. *B. Ins. Co.*, 41 Barb. 231; 5

Abb. Ct. App. Dec. 251 ; *Lawrence* v. *S. M. Ins. Co.*, 43 Barb. 479 ; *Redfield* v. *H. P. Ins. Co.*, 56 N. Y. 354; *Waring* v. *I. Ins. Co.*, 45 id. 606 ; *Cone* v. *N. Ins. Co.*, 60 id. 619 ; *Cline* v. *Q. Ins. Co.*, 7 Hun, 267 ; 69 N. Y. 614; *Creighton* v. *H. Ins. Co.*, 17 Hun, 78 ; *Pelton* v. *W. Ins. Co.*, 13 Hun, 23 ; 77 N. Y. 605 ; *Rohrback* v. *G. F. Ins. Co.*, 62 id. 47 ; *Herkimer* v. *Rice*, 27 id. 163 ; *N. F. O. Co.* v. *C. Ins. Co.*, 106 id. 535 ; *Stephenson* v. *L. & L. Ins. Co.*, 26 Q. B. U. C. 148 ; 5 Bennett's Ins. Cases, 94 ; *I. Ins. Co.* v. *Murray*, 75 Penn. St. 13 ; 5 Bennett's Ins. Cases, 526.) There can be no objection as to want of notice of loss in this case. (*Pratt* v. *N. Y. C. Ins. Co.*, 55 N. Y. 595 ; *Brink* v. *H. Ins. Co.*, 80 id. 108 ; *Titus* v. *G. F. Ins. Co.*, 81 id. 410.) The fraud practiced upon the plaintiff by the defendant's agent, gave the court the right to afford the plaintiff affirmative relief from the unconscionable settlement made. (2 Pom. Eq. Juris. §§ 841, 847, 849 ; *Cook* v. *Nathan*, 16 Barb. 342 ; *Busch* v. *Busch*, 12 Daly, 476 ; *Boyd* v. *De La Montagnie*, 73 N. Y. 498 ; *Hunt* v. *Rousmanier*, 8 Wheat. 174 ; Story's Eq. Juris. § 138 ; *M. Ins. Co.* v. *Bowen*, 42 Mich. 10.) The defendant has its principal place of business in St. Louis. The plaintiff brought the draft into court, in fact, and by the complaint and the decree, provided that the draft should be put in the hands of the county clerk, subject to the order of the defendant. These propositions are a full compliance with the conditions necessary to be performed preliminary to bringing the suit. (*Blewett* v. *Baker*, 58 N. Y. 611 ; *Hale* v. *Patton*, 60 id. 233 ; *Pequeno* v. *Taylor*, 38 Barb. 375 ; *Nichols* v. *Micheals*, 23 N. Y. 264.)

BROWN, J.   There was in this case no misrepresentation as to any fact which was material to the plaintiff's right to recover upon the policy. Indeed, there is no evidence but that the adjuster personally acted in entire good faith, and having no knowledge of the information received by the agents as to the title when the insurance was effected, doubtless believed that the policy was void. But any knowledge or information

which any of the defendant's agents received during the transaction with the plaintiff is by law imputed to it, and assuming that the plaintiff, at the time of effecting the insurance, stated correctly the facts as to the title, the statement made by the adjuster that the policy, by reason of its conditions and the fact that the plaintiff's son was the owner, were, as emanating from the defendant, fraudulent in law and deceitful.

The court found in substance that the settlement and the cancellation of the policy was procured by the statement made to the plaintiff that the policy was void, and that, relying upon such, plaintiff was led into a mistake as to his legal rights thereunder.

The evidence on the subject was that the adjuster read to the plaintiff the clause in the policy declaring that it should be void if the interest of the assured was other than that of sole and unconditional ownership, and told him that he was well acquainted with the law of insurance, and because the property belonged to his son, plaintiff had no right to insure it in his own name, and the policy was, for that reason, void, and nothing could be collected upon it.

The plaintiff was a man of little business experience, although he had education enough to understand the transaction and read the papers which he signed, and he made the settlement voluntarily, without any coercion upon him, but relied upon the representation as to the law governing his case which the defendant falsely made to him.

There is no question, of course, but that a court of equity cannot grant relief solely upon a mistake of law. But there was here more than a mistake. There was a surrender of legal rights intentionally induced and procured by a false representation as to the law governing the case. The defendant must be presumed to have known that it was liable for the whole loss and by falsely representing that under the law applicable to the case the policy was void, when in fact it was valid, it induced the plaintiff to rely upon the superior knowledge that it possessed upon the subject and to surrender to it his claim.

This clearly constituted fraud and there would be manifest injustice in upholding a settlement under such circumstances. We think the case falls within well settled rules of equitable jurisdiction, and that the decision of the Special Term was right. (2 Pomeroy's Eq. Jurisprudence, §§ 847, 848, 849; Willard's Eq. pp. 68, 69; *Busch* v. *Busch*, 12 Daly, 476; *Wheeler* v. *Smith*, 9 How. [U. S.] 55; *Cooke* v. *Nathan*, 16 Barb. 392; *Boyd* v. *De LaMontagnie*, 73 N. Y. 498; *Jordan* v. *Stevens*, 51 Me. 78; *M. M. L. Ins. Co.* v. *Bowes*, 42 Mich. 19; *Freeman* v. *Curtis*, 51 Me. 140.)

The appellant does not, however, question the power of the court to grant relief in such a case, and the only point seriously urged upon us in this connection is that the plaintiff made no proper or sufficient tender of the draft to the defendant before bringing suit. The plaintiff offered in his complaint to deliver up the draft, and upon the trial produced it in court, and by the decree it was to be deposited with the clerk and delivered to the defendant or its agent.

It was unnecessary for the plaintiff to do more than he did. In fact he had received nothing from the defendant. Between parties the note of one of them is not property, but a mere promise to pay, which is avoided by rescission of the contract.

The draft which plaintiff held was drawn upon defendant by its own agent. It was of no greater force or value than the defendant's note would have been, and in such a case a tender and surrender upon trial was all that was essential to the plaintiff's right to the relief sought. (*Thurston* v. *Blanchard*, 22 Pick. 18; *Nichols* v. *Michael*, 23 N. Y. 264; *Gould* v. *Cayuga Bank*, 86 id. 75–82.)

But in an equity action to rescind a settlement, the rule invoked by defendant has no application. If the plaintiff had failed on the trial the settlement would have stood and he would have been entitled to retain and use the draft. And it is sufficient in such an action for the plaintiff to offer in his complaint to restore what he has received, and the rights of the parties are then regulated and protected in the judgment,

(*Allerton* v. *Allerton*, 50 N. Y. 670 ; *Vail* v. *Reynolds*, 118 id. 297–307.)

We come, therefore, to the question whether a recovery upon the policy can be upheld. The first contention of the defendant is that the plaintiff had no insurable interest in the buildings.

The rule is well settled that it is not necessary to support an insurance that the assured should have an interest, legal or equitable, in the property destroyed. It is enough if he is so situated with reference to it that he would be liable to loss if it is destroyed or injured by the peril insured against.

In brief, a person may insure against his liability with reference to a certain property as well as his interest therein. (*Insurance Co.* v. *Chase*, 5 Wall. 509–513 ; *Nat. Filtering Oil Co.* v. *Citizens' Ins. Co.*, 106 N. Y. 535–541 ; 3 Kent's Com. [6th. ed.] 276.)

The test of insurable interest is whether an injury to the property or its destruction by the peril insured against would involve the assured in pecuniary loss. (Wood on Fire Ins. § 282.)

Thus a common carrier may insure goods intrusted to him to their full value without regard to his liability to the owner. (*Crowley* v. *Cohen*, 3 B. & Ad. 478 ; *London & N. W. Ry. Co.* v. *Glyn*, 1 El. & El. 652.)

So may a warehouseman, although liable to the owner only for his own negligence. (*Waters* v. *Monarch F. & L. Ass. Co.*, 5 El. & Bl. 870 ; *Stillwell* v. *Staples*, 19 N. Y. 401 ; *DeForest* v. *Fulton F. Ins. Co.*, 1 Hall, 84.)

So may a charterer of a vessel, who is liable to pay its value in case of loss, or has contracted to insure it against usual risks. (*Oliver* v. *Greene*, 3 Mass. 133 ; *Bartlet* v. *Walter*, 13 id. 267.)

Insurers of a building have an insurable interest therein which they may reinsure. (*N. Y. Bowery F. Ins. Co.* v. *N. Y. F. Ins. Co.*, 17 Wend. 359.)

And a tenant, who has agreed verbally to keep the demised property insured, is liable to the lessor for a breach of that

agreement, and has an insurable interest in the property to the extent of the amount agreed to be insured. (*Lawrence* v. *St. Mark's F. Ins. Co.*, 43 Barb. 479.)

Other illustrations of this rule are to be found in *Herkimer* v. *Rice* (27 N. Y. 163); *Kline* v. *Q. I. Co.* (7 Hun, 267; 67 N. Y. 614); *Waring* v. *Indemnity F. Ins. Co.* (45 id. 606); May on Ins. ch. 6; 1 Wood on Fire Ins. ch. 8.

The principle upon which these cases all rest is that there is a possible liability arising out of the peril insured against, and that creates an insurable interest.

Under the contract with his son, the plaintiff had agreed, among other things, to keep the property insured, and this agreement gave him a right to insure the buildings in his own name to their full value. The defendant contends that, as the contract with his son was by parol and hence void, the plaintiff had no interest in or liability towards the insured property. This proposition might have some weight if the insurance was upon the title or interest of the plaintiff as life tenant, or if there had been representations on the part of the plaintiff that such was the interest intended to be insured. But we think it has no application to the case made by the evidence. The plaintiff, while in the unquestioned enjoyment and possession of the property, could not deny his liability under the contract with his son to insure, and under that agreement, so far as is disclosed in this action, would have been liable for the loss of the buildings, if he had failed to insure them.

The defendant, if it had notice of the relation which plaintiff bore to the property, cannot deny the legality of its contract, although it may be that the plaintiff could not have enforced against his son his right to use the property for life had that been denied. The final question is whether the defendant had such notice of the facts as to the title to the property as justified the court in finding that it had waived the conditions heretofore quoted.

The question of waiver was one of fact, and we think the evidence was sufficient to support the conclusion reached.

SICKELS—VOL. LXXXVII.      8

There was evidence to the effect that plaintiff informed the agent who issued the policy that his son, who lived in Chicago, had bought the property for him, and he was to have it as a home as long as he lived, and that he was to insure it, keep it in repair and pay the taxes.

This statement fairly gave notice to the agent that the plaintiff was not the owner of the property, and that, as a part of the consideration for its use and possession, he had agreed to insure it.

If the defendant desired further information as to the title, it should have requested it, and not having done so, it must be assumed now to have had notice of such facts as it could with reasonable diligence then have ascertained.

This evidence justified the finding that the conditions of the policy as to title were waived, and this conclusion was not weakened by the fact that in the policy delivered there was a condition that no agent had power to waive any of the conditions of the policy, and no notice to or agreement by any agent would be binding on the defendant unless expressed in writing and indorsed upon the policy and signed by the agent.

The agents who issued the policy were general agents having authority to make contracts without reference to the home office, and their power to waive conditions in the policy was coexistent with that of the company itself. (*Trustees* v. *Brooklyn Ins. Co.*, 19 N. Y. 305; *Walsh* v. *Hartford Ins. Co.*, 73 id. 5–9.)

Conditions which enter into the validity of a contract of insurance at its inception may be waived by agents, and are waived if so intended, although they remain in the policy when delivered. (*Van Schoick* v. *Niagara F. Ins. Co.*, 68 N. Y. 434; *Bennett* v. *North British & M. Ins. Co.*, 81 id. 273; *Woodruff* v. *Imperial F. Ins. Co.*, 83 id. 133; *Haight* v. *Continental Ins. Co.*, 92 id. 51.)

The judgment should be affirmed.

All concur.

Judgment affirmed.